UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES | : | 24 Cr. 450 (RDM) |
| v. | : | |
| BOBBY JAPHIA | : | |
| Defendant. | : | |

## DEFENDANT'S MOTION TO SUPPRESS
## RESULTS OF SEARCH WARRANT

### INTRODUCTION

Defendant Bobby Japhia moves this Court to suppress materials improperly obtained by the prosecution from search warrants executed against four email accounts and an account on "X." As explained herein, the affidavit in support of the warrants failed to establish probable cause that the searches would locate "evidence, instrumentalities, or fruits" of a crime. Rather, the affidavit only (but repeatedly) stated that there "may" be such information located in the emails and X account. The verb "may" expresses only the possibility or the hope that such materials would be found. As a matter of law such conjecture provided an insufficient basis for the reviewing judicial officer to conclude that the requisite "probable cause" existed to establish that the allegedly relevant evidence would be located. Accordingly, the materials must be suppressed as obtained in violation of the Fourth Amendment.

### RELEVANT FACTUAL BACKGOUND

1. *The Accounts To Be Searched*

On or about October 31, 2023, a law enforcement officer assigned to the Office of the Inspector General of the United States Securities and Exchange Commission submitted an affidavit in support of a search warrant for information relating to the following electronic mail

1

accounts: (1) . . . . . @yahoo.com; (2) robshumake@gmail.com; (3) robert@minercoinc.com; and (4) robshumake@icloud.com. The Government also sought information relating to the following account on the platform known as X: @MinercoInc. A redacted copy of the Affidavit is attached as Exhibit 1. [1]

The affidavit alleges that these accounts were used in connection with a "pump and dump" stock manipulation scheme and/or in connection with funds that were fraudulently obtained from the Small Business Administration's Economic Injury Disaster Loan Program ("EIDL"). The affidavit discusses the scope of the investigation into both of these alleged offenses and sets forth the result of the investigation in detail, including allegations of misrepresentations and concealment in connection with the stock scheme and the EIDL loans.

The affidavit stated sought permission to search for the "evidence, fruits, and instrumentalities" of Wire Fraud, Money Laundering, and Securities Fraud in the stored emails and numerous other aspects of the accounts, including, *inter alia*: (1) personal information about the subscriber(s); (2) log in IP Protocol addresses; (3) communications between the account users and the service provider; and (4) payment information – from October 1, 2019 until December 31, 2021. The Government sought similar information from the "X" account.

2. *The Affidavit Does Not Sufficiently Allege That Probable Cause Exists*

Notwithstanding some conclusory probable cause language in the affidavit, the analytical paragraphs are much less decisive. The affiant did not state that there was "reason to believe" that relevant information would be obtained from a search of the emails and/or X accounts. Rather, the affiant repeatedly used the verb "may" to express the possibility that evidence, fruits or instrumentalities of a crime would be recovered. The following are a few representative examples from the affidavit.

> In my training and experience, in some cases, email account users will communicate directly with an email service provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. Email providers typically retain

---

[1] The name of the first email account is being redacted at the Government's request. An unredacted copy of the Affidavit will be filed under seal in connection with this motion, which contains the complete email address.

> records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications. **In my training and experience, such information may constitute evidence of the crimes under investigation** because the information can be used to identify the account's user or users.

Paragraph 78 (emphasis added)

> As explained herein, information stored in connection with an email account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. . . .
>
> Last, stored electronic data may provide relevant insight into the email account owner's state of mind as it relates to the offense under investigation. For example, **information in the email account may indicate the owner's motive and intent to commit a crime** (e.g., communications relating to the crime), or consciousness of guilt (e.g., deleting communications in an effort to conceal them from law enforcement).

Paragraph 79 (emphasis added).

> In my training and experience, **evidence of who was using a Twitter account and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above. This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion.** For example, the evidence may establish who and how co-conspirators communicated in private to facilitate their scheme.

Paragraph 100 (emphasis added).

## LEGAL ANALYSIS

### The Affidavit Fails To Establish Probable Cause As A Matter Of Law

1. *The Fourth Amendment Requires Probable Cause To Search*

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause...." U.S. Constitution" amendment IV. The fundamental purpose of the Fourth Amendment "is to safeguard the privacy and security

of individuals against arbitrary invasions by government officials." Camara v. Municipal Court, 387 U.S. 523, 528 (1967). Accord Skinner v. Ry. Labor Executives Association, 489 U.S. 602, 613–14 (1989)("The [Fourth] Amendment guarantees the privacy, dignity, and security of persons against certain arbitrary and invasive acts by officers of the Government or those acting at their direction.").

The Supreme Court has been clear that the test for probable cause is not reducible to "precise definition or quantification." Maryland v. Pringle, 540 U.S. 366, 371 (2003). Nonetheless the Court has required that such evidence demonstrate a "fair probability" on which "reasonable and prudent" people could rely. Florida. v. Harris, 568 U.S. 237, 243–44 (2013). Or put another way, "in essence, probable cause is a reasonable ground for a particularized belief of guilt. United States v. Wills, 316 F. Supp. 3d 437, 446 (D.D.C. 2018). See also United States v. Gorman, 314 F.3d 1105, 1110 (9th Cir. 2002)(the "reason to believe" standard embodies the same standard inherent in probable cause). The probable cause standard applies to the search of email accounts. United States v. Rinsch, 2025 WL 2972226, at *2 (S.D.N.Y.).

When the language of the affidavit presented in this case is measured against the requirement of reasonable probability, the affidavit fails.

2. *"May Be Found" Is Not Probable Cause As A Matter Of Law*

The starting point in the analysis of the sufficient of the affidavit in support of the request to search the email and X accounts is with the plain language presented to the reviewing court. It is clear that the facts presented "must be sufficient to justify a conclusion that the property which is the object of the search is probably on the premises to be searched at the time the warrant is issued." United States v. Greany, 929 F.2d 523, 524–25 (9th Cir.1991). In the context of the search of electronic records, this means that the affiant must provide the court with reason to

4

believe that evidence, fruits, or instrumentalities of the alleged crimes would be found in the contents of the email and/or X accounts.

In this case, however, the affiant was only able to aver that such information "may" be found in these locations. No stronger allegation of nexus is contained in the affidavit. The online Cambridge Dictionary defines the verb "may" as follows: (1) used to express possibility; (2) used to ask or give permission; and (3) used to introduce a wish or a hope. https://dictionary.cambridge.org/us/dictionary/english/may. Thus, no definition of the word "may" even remotely satisfies the probable cause requirement. "May" connotes an aspirational possibility, not a reasonable likelihood that relevant information would be found. The repeated and intentional use of the verb "may" is insufficient as a matter of law to establish the probable cause necessary to support the warrant request.

This failure of the affidavit submitted in this case is even more evident when compared with the representations contained in affidavits submitted in support of other search warrants for electronic records. In <u>United States v. Tsarnaev</u>, 53 F. Supp. 3d 450 (D. Mass. 2014), for example, the Federal Bureau of Investigation obtained a search warrant for electronic records relevant to the bombing of the Boston Marathon. The affidavit in support of the warrant specifically linked the affiant's experience to establish a sufficient likelihood that relevant information would be obtained:

> I also have probable cause to believe that the Subject Accounts and the data associated with those accounts contain evidence, fruits, and instrumentalities of the crimes identified above. I base this conclusion in part on my training and experience. I know that many people regularly use e-mail to provide contact information to others, as well as to discuss future plans and to make logistical arrangements. **I also know, based on my training and experience, that many criminals use e-mail to plan and discuss their criminal schemes.**

Tsarnaev, 53 F. Supp. 3d at 462 (emphasis added). The distinction between the representations in this affidavit and the one at issue in this case is more than just semantic nuance. The affidavit in *Tsarnaev* creates a sufficient nexus (based upon the agent's experience and training) between the email account and the objects of the search. In this case, the same level of certainy was not made and this left the reviewing judge with only speculation and conjecture to satisfy the probable cause requirement. Accordingly, the search results must be suppressed.

## CONCLUSION

For all of the foregoing reasons and argument and such others that may be identified in the reply memorandum in this case, the defense respectfully requests that this Court suppress the results of the search warrants for the identified email and X accounts.

Respectfully submitted,

*Robert Feitel*

_____
Robert Feitel, Esquire
1300 Pennsylvania Avenue, N.W.
#190-515
Washington, D.C. 20008
D.C. Bar No. 366673
202-255-6637 (cellular)
RF@RFeitelLaw.com

6

CERTIFICATE OF SERVICE

      I hereby certify that a copy of the foregoing was sent via ECF to DOJ Trial Attorneys Aaron Henricks Kyle Crawford, and Andrew Jaco, Fraud Section 1400 New York Avenue, N.W. Washington DC. this 3rd day of November, 2025.

*Robert Feitel*

_____

Robert Feitel

7